UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

Jason D. Cooper,

          Plaintiff,

  v.

Travis Hill et al.,

          Defendants.

**Decision and Order**

12-CV-1227S

───────────────────────────────

I.  **INTRODUCTION**

  Plaintiff Jason Cooper ("Cooper") allegedly was attacked by corrections officers on October 21, 2012, when the officers mistook him for someone who participated in a prison riot. For up to eight hours after the riot, the corrections officers allegedly attacked Cooper a second time, transferred him from one cellblock to another, and failed both to document his whereabouts and to file certain procedurally required incident reports. Cooper subsequently commenced this litigation, alleging various theories of liability by way of 42 U.S.C. § 1983. Because the current operative complaint (Dkt. No. 10) was filed when Cooper was *pro se*, he now seeks leave to amend his complaint (Dkt. No. 68)[1] to add new individuals and the New York State Department of Corrections and Community Services ("DOCCS") as defendants. Cooper also seeks to add Fourteenth Amendment allegations against certain individuals along with negligence or gross negligence allegations against DOCCS itself.

  District Judge William M. Skretny has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. No. 22.) The Court has deemed the motions submitted on papers under Rule 78(b)

───────────────

[1] Motions to amend a complaint are considered non-dispositive. *See, e.g., Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007); *Palmer v. Monroe Cty. Sheriff*, 378 F. Supp. 2d 284, 289 (W.D.N.Y. 2005) (citations omitted).

of the Federal Rules of Civil Procedure.  For the reasons below, the Court denies Cooper's motion but without prejudice.

## II.    BACKGROUND

This case concerns an assault that Cooper allegedly suffered at the hands of corrections officers while an inmate at Five Points Correctional Facility ("Five Points") in Romulus, New York.  On October 21, 2012 around 9:00 PM, an inmate riot broke out in the Five Points recreational yard.  Cooper was in the yard at the time.  Cooper claims to have had no involvement in the riot, but he allegedly was misidentified as a participant and assaulted anyway in the recreational yard shortly after corrections officers restored order.  Cooper alleges a second assault after he was taken inside and brought to a Five Points intake area:

> Mr. Cooper was then brought to the 5PCF [Five Points] intake area where he was placed in a pen along with other inmates who had been in the gym.  Mr. Cooper was then led to the shower area next to the 5PCF intake area.  Present there were Defendants Michael Maltese ("Maltese") and Shawn Vanhorn ("Vanhorn"), both COs, as well as other unidentified COs.
>
> Defendant Maltese put a plastic bag over Mr. Cooper's head and Defendant Vanhorn turned the shower on and placed Mr. Cooper's head under the shower, or "water boarded" Mr. Cooper.  The COs were questioning Mr. Cooper about the riot.  Defendant Maltese repeatedly kicked Mr. Cooper in the groin area.
>
> Defendants Maltese and Vanhorn and the other CO kicked Mr. Cooper in the back of the legs and hit him in the head while questioning him about the riot.  Defendants threatened to force Mr. Cooper to drink Gatorade bottles filled with urine.  Defendant Maltese told Mr. Cooper that he would kill him if he told anyone about what had happened.  Mr. Cooper was then brought back to the pen.  Around 3:30 a.m., Mr. Cooper was moved to Block 11 on the orders of an unidentified 5PCF personnel [sic]

(Dkt. No. 68-1 at 8.)  Apart from the assaults themselves, Cooper has drawn attention in his pleadings to how officials at Five Points lost track of him for up to eight hours during the night of October 21–22, 2012.  By "losing track," Cooper means that the riot should have prompted a number of procedures and reports including a count of all inmates from his Block 9; paperwork

2

documenting his transfer from one cellblock to another; the creation of an Unusual Incident Report; and the filing of a Use of Force Report. None of these procedures happened, purportedly in violation of various DOCCS directives and state regulations. As a result, according to Cooper, officials at Five Points have no documentation of Cooper's whereabouts for up to eight hours after the riot in question.

Cooper commenced this case by filing his original complaint on December 11, 2012. (Dkt. No. 1.) Cooper filed an amended complaint on May 23, 2013. (Dkt. No. 10.) Cooper was *pro se* when he filed both of these complaints. Judge Skretny appointed *pro bono* counsel for Cooper February 3, 2015. (Dkt. No. 50.) Cooper now has filed the pending motion for leave to amend his complaint for the first time with the assistance of counsel. The existing two counts for excessive force under Section 1983 would remain unchanged. Cooper proposes adding new Counts 3 through 14 for negligence or gross negligence, along with new Counts 15 through 19 for violations of the Fourteenth Amendment by way of Section 1983. As Cooper has explained, the new claims stem from the following facts allegedly uncovered so far during discovery:

> 1) Mr. Cooper was unaccounted for hours during the emergency situation. Mr. Cooper's letter dated December 7, 2012, found at P. 17–18 of the Amended Complaint, states that he was in the yard, taken into the gym and then to the draft room, or intake area.
>
> 2) Mr. Cooper's Use of force report disappeared. Mr. Cooper alleged in his Amended Complaint that he was assaulted by Defendants Hill, Maltese and Vanhorn. It is a reasonable inference that when an inmate is assaulted that a Use of Force report will be produced and acted upon per DOCCS Directive.
>
> 3) Mr. Cooper was transferred to a new Block during riot. Mr. Cooper letters dated 10/28/12 and 12/7/12, found at P. 12 and p. 17–18 of the Amended Complaint states that he was moved from Block 9 to Block 11 the night of the riot.
>
> 4) Superintendent failed to render a decision in Mr. Cooper's grievance. Mr. Cooper's letter dated 12/7/12, found at P. 17–18 of the Amended Complaint, states that his grievance has not been resolved yet. Also, Mr.

3

> Cooper's letter dated 12/7/12, found at P. 19 of the Amended Complaint asks Superintendent Sheahan for a resolution to his grievance.
>
> 5) Failure of DOCCS Inspector General to conduct investigation. Mr. Cooper's letter dated 11/11/12, found at P. 23 of the Amended Complaint, is to the DOCCS Inspector General discussing his grievance. Also, DOCCS letter dated 12/19/12 to Mr. Cooper, found at P. 11 of the Amended Complaint, states that his grievance was referred to the Office of the Inspector General.
>
> 6) Gross negligence. The reasonable inferences that can be drawn from the original complaint as pointed out above is that defendants deliberately, willfully and intentionally committed these acts such as to support the gross negligence claims.
>
> 7) Negligence. The reasonable inferences that can be drawn from the original complaint as pointed out above is that defendants recklessly committed these acts such as to support the negligence claims.

(Dkt. No. 68-1 at 15–16.) With respect to parties, Cooper proposes adding DOCCS; Five Points Superintendent Michael Sheahan; Corrections Officer C. Haff; the as-yet unnamed Watch Commander from Five Points for the night in question; and the as-yet unnamed Inspector General who allegedly failed to issue any findings from the investigation of the riot.

Defendants oppose Cooper's motion for several reasons. To the extent that Cooper is looking to add defendants in their official capacities, defendants claim that Eleventh Amendment immunity would make the amendment futile. Defendants assert that the new claims would be untimely and cannot relate back to the original complaint because of the way in which they add new parties and theories of liability. Defendants also claim that undue prejudice and delay would result from another amendment of Cooper's complaint. Finally, defendants argue that some of the proposed new claims do not set forth a precise theory of liability by way of Section 1983, while other claims fail to demonstrate how a failure to follow certain administrative procedures rises to the level of a constitutional violation.

## III. DISCUSSION

### A. Motions to Amend Generally

Under the circumstances here, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citation omitted). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citation omitted).

### B. The Proposed Claims Against DOCCS

Of the various arguments that the parties have made, the Court will begin by looking at the arguments concerning a failure to state a claim. In particular, the Court is concerned at the way in which Cooper's proposed new counts against DOCCS are worded. Counts 3 through 14 allege various acts of negligence or gross negligence against DOCCS itself. In these proposed new counts, Cooper makes repeated reference to how "DOCCS owed Mr. Cooper a duty" (Dkt. No. 68-2 at 9, 11), or how "DOCCS knew" the need for various reports (*Id.* at 13), or how "DOCCS negligently failed to perform ministerial tasks required of it" (*Id.*). Names of individual officers or personnel appear occasionally in these proposed counts, but Cooper ultimately charges all of the liability to DOCCS as an entity.

There are several problems with this approach. "Section 1983 imposes liability for conduct which subjects, or causes to be subjected the complainant to a deprivation of a right secured by the Constitution and laws. It is well-settled that states and governments are not persons under § 1983 and, therefore, Eleventh Amendment immunity is not abrogated by § 1983." *Hilton v. Wright*, 928 F.

Supp. 2d 530, 546 (N.D.N.Y. 2013) (internal quotation marks and citations omitted); *see also, e.g., Wilson v. Celestin*, No. 17-CV-5592 (MKB), 2018 WL 2304762, at *2 (E.D.N.Y. May 18, 2018) ("As a general matter, states enjoy sovereign immunity from suit in federal court, even if the claim arises under federal law. States may only be sued in federal court when they have waived their sovereign immunity, Congress has acted to abrogate state sovereign immunity pursuant to Section 5 of the Fourteenth Amendment, or the plaintiff is suing a state official in his or her official capacity for prospective injunctive relief from an ongoing constitutional violation.") (internal quotation marks and citations omitted); *Johnson v. New York*, No. 10 CIV. 9532 DLC, 2012 WL 335683, at *1 (S.D.N.Y. Feb. 1, 2012) ("DOCCS is an arm of the state. Consequently, plaintiff's claims against the State of New York and DOCCS, an agency of the State of New York, are barred by the Eleventh Amendment and must be dismissed."). Additionally, Cooper alleges ministerial and administrative violations in Counts 3 through 14 that, by themselves, do not appear to implicate constitutional violations. "A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations. A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983." *Walker v. Bellnier*, No. 9:17-CV-1008, 2018 WL 345951, at *4 (N.D.N.Y. Jan. 10, 2018) (internal quotation marks and citations omitted).

As a result, the proposed Counts 3 through 14 fail to state a claim against DOCCS, making any amendment to add them futile. The Court thus denies Cooper's motion for leave to amend, with respect to the proposed Counts 3 through 14. The denial is without prejudice; Cooper should have one opportunity, with the assistance of counsel,[2] to reformulate any additional claims against individuals in a way that complies with Section 1983 and this Decision and Order.

---

[2] *Cf. Rivas v. Suffolk Cty.*, No. 04-4813-PR(L), 2008 WL 45406, at *2 (2d Cir. Jan. 3, 2008) (summary order) (remanding for appointment of counsel and holding that "[a]ppointed counsel should be given the opportunity to file in the district court any and all motions that counsel deems appropriate, including motions

### C. The Proposed Fourteenth Amendment Claims

The Court turns next to Counts 15 through 19 in the proposed amended complaint. In these counts, Cooper alleges the same facts and the same events that he does elsewhere. Cooper connects these events to the Fourteenth Amendment as follows:

> Defendants Watch Commander and Sheahan were responsible for ascertaining the whereabouts of all of the inmates during the riot in order to keep them safe. They did this for every inmate in Block 9. However, they failed to do so for Mr. Cooper for some irrational and arbitrary reason. Mr. Cooper suffered injury and could have very easily suffered other horrible injuries at the hands of either COs or other inmates.

(Dkt. No. 68-2 at 24.) Cooper hints at the Fourteenth Amendment when he alleges in Count 19 that

> The Inspector General has deliberately, intentionally and willfully failed to conduct the investigation it was charged to do. The Inspector General's blatant failure to fulfill its duty is caused a desire to keep hidden the fact that 5PCF personnel could not account for Mr. Cooper's whereabouts in the hours following the riot; the fact that Mr. Cooper was assaulted but his Use of Force report disappeared and was destroyed; the fact that Mr. Cooper was moved from one Block to another during a lockdown in contradiction of DOCCS policy or Directive; and that Mr. Cooper suffered injuries and water boarding at the hands of COs.

(*Id.* at 28–29.)

"To attack the content of a government policy as violating the Equal Protection Clause, claimants must prove purposeful discrimination, directed at an identifiable or suspect class. Alternatively, to win a claim of selective enforcement, a plaintiff must prove that he was intentionally treated differently from other similarly situated individuals; and that the disparate treatment was either (a) irrational and wholly arbitrary or (b) motivated by animus. The Second Circuit has expanded on this latter test, explaining that a plaintiff must prove that (i) no rational

---

for default judgment, to reopen discovery, and for a new trial"); *Barlow v. Male Geneva Police Officer Who Arrested Me on Jan. 2005*, No. 06-CV-6592 CJS MWP, 2013 WL 792762, at *6 (W.D.N.Y. Mar. 4, 2013) (appointing *pro bono* counsel and reopening discovery accordingly); *Maggette v. Dalsheim*, No. 81 CIV. 7050 (PKL), 1985 WL 1393, at *1 (S.D.N.Y. May 21, 1985) (noting, as background, multiple amendments of pleadings and ongoing discovery after appointment of *pro bono* counsel).

person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake. In such a 'class of one' case, the existence of persons in similar circumstances who received more favorable treatment than the plaintiff is offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose— whether personal or otherwise—is all but certain." *Vann v. Fischer*, No. 11 CIV. 1958 KPF, 2014 WL 4188077, at *19 (S.D.N.Y. Aug. 25, 2014) (internal quotation and editorial marks and citations omitted). Compared to the standard for an equal-protection violation, Cooper's proposed amendments fall short. Cooper admits in his own proposed amended complaint that Five Points's failure to track his whereabouts on the night of the riot was not the result of intentional and discriminatory animus. "Mr. Cooper was treated differently than other inmates because Defendants Sheahan or Watch Commander did not follow the proper procedure to transfer Mr. Cooper from Block 9 to Block 11." (Dkt. No. 68-2 at 26; *see also id.* at 25 ("Defendants Haff and Sheahan were left staring at Mr. Cooper's Use of Force Report and wandering [sic] what to do.").) Cooper's allegations of confusion and failure to follow procedure, for the filing or reports or the processing of grievances, sound like violations of governmental policy that do not rise to the level of Fourteenth Amendment violations. *Cf. Telesford v. Annucci*, No. 916CV0793BKSDEP, 2017 WL 3600941, at *6 (N.D.N.Y. July 26, 2017) ("[I]t is well settled that violations of state regulations, standing alone, are not cognizable under section 1983.") (citations omitted), *report and recommendation adopted*, No. 916CV0793BKSDEP, 2017 WL 3588640 (N.D.N.Y. Aug. 18, 2017); *Banks v. Annucci*, 48 F. Supp. 3d 394, 414 (N.D.N.Y. 2014) ("The law is clear that inmates do not enjoy a constitutional right to an

8

investigation of any kind by government officials.") (citations omitted); *Odom v. Poirier*, No. 99 CIV. 4933(GBD), 2004 WL 2884409, at *10 (S.D.N.Y. Dec. 10, 2004) ("While the filing of grievances is constitutionally protected, the manner in which grievance investigations are conducted do not create a protected liberty interest.") (citation omitted); *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("Prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment.") (citations omitted). Under these circumstances, Cooper's proposed amendments would set forth a Fourteenth Amendment violation in conclusory fashion and in a way that would not survive a motion to dismiss.

The Court thus denies Cooper's motion for leave to amend for the proposed Counts 15 through 19. As with the other counts, however, this denial is without prejudice. Cooper should have one opportunity, with the assistance of counsel, to reformulate any Fourteenth Amendment claims against specific individuals in a way that complies with Section 1983 and this Decision and Order.

### D. Other Amendments

Finally, a portion of Cooper's motion for leave to amend concerns the addition of specific individual defendants to this litigation. In light of the analysis that the Court has set forth above, and given that any amended complaint submitted in the future would have to be substantially restructured, the Court will not try to salvage small portions of the amended complaint proposed right now. Cooper can seek leave in the future if he wants to add specific individuals to this case under appropriate theories of Section 1983 liability.

## IV. CONCLUSION

For all of the foregoing reasons, the Court denies Cooper's motion for leave to amend (Dkt. No. 68), but without prejudice.

SO ORDERED.

__/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: June 5, 2018