UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Jason D. Cooper,

                        Plaintiff,

      v.

Travis Hill et al.,

                        Defendants.

**Decision and Order**

12-CV-1227S

---

## I. INTRODUCTION

Plaintiff Jason Cooper ("Cooper") asserts that he was attacked by corrections officers on October 21, 2012, when the officers mistook him for someone who participated in a prison riot. For up to eight hours after the riot, the corrections officers allegedly attacked Cooper a second time, transferred him from one cellblock to another, and failed both to document his whereabouts and to file certain procedurally required incident reports. Cooper subsequently commenced this litigation, alleging various theories of liability by way of 42 U.S.C. § 1983.

Because the current operative complaint (Dkt. No. 10) was filed when Cooper was *pro se*, he now seeks leave to amend his complaint with the aid of *pro bono* counsel.[1] Cooper sought leave once before (Dkt. No. 68); the Court denied leave but without prejudice to try again to correct certain defects. (Dkt. No. 74); *see also Cooper v. Hill*, No. 12-CV-1227S, 2018 WL 2676016, at *1 (W.D.N.Y. June 5, 2018). Cooper filed a new motion on August 10, 2018. (Dkt. No. 77.) Under the new motion, the proposed amended complaint would add one defendant dismissed previously after initial screening; add one new defendant; and add several "John Doe" defendants whose names have

---

[1] Motions to amend a complaint are considered non-dispositive. *See, e.g., Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007); *Palmer v. Monroe Cty. Sheriff*, 378 F. Supp. 2d 284, 289 (W.D.N.Y. 2005) (citations omitted).

not yet been obtained but whose roles in the events of October 21, 2012 purportedly can be inferred from the discovery that has occurred so far. As for substantive allegations, the proposed amended complaint would organize Cooper's claims into nine counts: two for excessive force under the Eighth Amendment; five for violations of substantive due process under the Fourteenth Amendment; and two for violations of equal protection under the Fourteenth Amendment. The defendants currently in the case oppose amendment, arguing that amendments at this point would be untimely and that the particular amendments proposed fail to state a cognizable claim.

District Judge William M. Skretny has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. No. 22.) The Court held oral argument on September 13, 2018. For the reasons below, the Court grants Cooper's motion in part.

## II. BACKGROUND

The Court summarized the relevant background facts in its prior Decision and Order and largely repeats it summary here.

This case concerns accusations of an assault that Cooper suffered at the hands of corrections officers while an inmate at Five Points Correctional Facility ("Five Points" or "5PCF") in Romulus, New York. On October 21, 2012 around 9:00 PM, an inmate riot broke out in the Five Points recreational yard. Cooper was in the yard at the time. Cooper claims to have had no involvement in the riot, but he was misidentified as a participant and assaulted anyway in the recreational yard shortly after corrections officers restored order. Cooper alleges a second assault after he was taken inside and brought to a Five Points intake area:

> Mr. Cooper was then brought to the 5PCF intake area where he was placed in a pen along with other inmates who had been in the gym. Mr. Cooper was then led to the shower area next to the 5PCF intake area. Present there were Defendants Michael Maltese ("Maltese") and Shawn Vanhorn ("Vanhorn"), both COs, as well as other unidentified John Doe(s) defendants.

2

> Defendant Maltese put a plastic bag over Mr. Cooper's head and Defendants Vanhorn and John Doe(s) turned the shower on and placed Mr. Cooper's head under the shower, or "water boarded" Mr. Cooper. Defendants were questioning Mr. Cooper about the riot. Defendant Maltese repeatedly kicked Mr. Cooper in the groin area.
>
> Defendants Maltese, Vanhorn and John Doe(s) kicked Mr. Cooper in the back of the legs and hit him in the head while questioning him about the riot. Defendants threatened to force Mr. Cooper to drink Gatorade bottles filled with urine. Defendant Maltese told Mr. Cooper that he would kill him if he told anyone about what had happened. Mr. Cooper was then brought back to the pen. Around 3:30am, Mr. Cooper was moved to Block 11 on the orders of an unidentified 5PCF personnel.
>
> Before Defendant Sheahan assumed control of 5PCF, upon information and belief, Defendant Watch Commander and the COs engaged in unruly behavior, such as alleged by Mr. Cooper against Defendant Maltese, Vanhorn and John Doe(s), with all of the inmates brought to the intake area.
>
> Because of the riot, Defendant Sheahan was required to submit an Unusual Incident report to DOCCS [New York State Department of Corrections and Community Supervision]. He essentially submitted verbatim the preliminary Unusual Incident report submitted by to him by Correction Officer Sergeant C. Haff ("Haff").

(Dkt. No. 77-1 at 8.) Apart from the assaults themselves, Cooper has drawn attention in his pleadings to how officials at Five Points lost track of him for up to eight hours during the night of October 21–22, 2012. By "losing track," Cooper means that the riot should have prompted a number of procedures and reports including a count of all inmates from his Block 9; paperwork documenting his transfer from one cellblock to another; the creation of an Unusual Incident Report; and the filing of a Use of Force Report. None of these procedures happened, which would implicate various DOCCS directives and state regulations. As a result, according to Cooper, officials at Five Points have no documentation of Cooper's whereabouts for up to eight hours after the riot in question:

> The Block 9 log shows the COs suspended counting prisoners *three* times immediately after the inmates were brought back inside after the riot. It was not until several hours after the inmates were brought back in that a count was first

> taken. The log does not list Mr. Cooper as among the inmates who received medical
> treatment on the Block that night, even though we have an Inmate Injury Report for
> Mr. Cooper. Mr. Cooper is not on a list of inmates who were brought back to Block
> 9 who received decontamination treatment for the chemical bomb.
>
> * * * *
>
> The Unusual Incident report makes no mention of Mr. Cooper's Use of
> Force report even though the report lists all of the other Use of Force reports from
> the riot. Defendants Sheahan and Haff would have received all of the Use of Force
> reports in order to prepare the Unusual Incident report. Mr. Cooper's report can
> only disappear due to a deliberate, conscious decision for it to happen.

(*Id.* at 9–10.)

Cooper commenced this case by filing his original complaint on December 11, 2012. (Dkt. No. 1.) The original complaint included now-proposed defendant Michael Sheahan ("Sheahan"), but Sheahan was dismissed during initial screening before service of process. (Dkt. No. 9.) Cooper filed an amended complaint on May 23, 2013. (Dkt. No. 10.) Cooper was *pro se* when he filed both of these complaints. Judge Skretny appointed *pro bono* counsel for Cooper on February 3, 2015. (Dkt. No. 50.)

Cooper now has filed the pending motion for leave to file his first complaint prepared with the assistance of *pro bono* counsel. "Mr. Cooper seeks to bring back into the present action Five Points Correctional Facility Superintendent Michael Sheahan as a party, as well as add the Five Points Correctional Facility Watch Commander on duty the night of October 21, 2012 and early morning of October 22, 2012, Five Points Correctional Facility Correction Officer C. Haff, the New York State Department of Corrections and Community Service ("DOCCS") Inspector General and John Doe(s)." (Dkt. No. 77-1 at 5.) Cooper believes that Sheahan is aware of the facts from the original complaint and that Haff can be considered to have constructive notice because his representation would come from the New York State Office of the Attorney General. With respect to John Doe defendants, "the original complaint listed John Doe as a defendant. Enough of the

4

facts now alleged in support of the new claims against the Watch Commander are all contained in the Amended Complaint such that he will be fairly apprised that he is an intended defendant. Mr. Cooper has attempted to obtain the identity of the Watch Commander in the limited discovery that has taken place, including a subpoena *duces tecum* served upon DOCCS but DOCCS has not provided the name of the Watch Commander." (*Id.* at 18.) As for substantive allegations, the existing two counts for excessive force under Section 1983 would remain unchanged. Cooper proposes adding new Counts 3 through 9 as summarized below:

> Count 3: "Defendants Sheahan and Watch Commander violated Mr. Cooper's Fourteenth Amendment Substantive Due Process right to be reasonably safe by their conscious decisions to override well established DOCCS procedures to conduct a count and know the whereabouts of every inmate. Mr. Cooper suffered injury and could have very easily suffered other horrible injuries at the hands of either CO or other inmates." (Dkt. No. 77-2 at 12.)
>
> Count 4: "Mr. Cooper was injured because Defendants violated his Fourteenth Amendment Substantive Due Process Rights of being reasonably safe when Defendants consciously and deliberately discarded a DOCCS record and denied Mr. Cooper the protection afforded him under DOCCS Directive No. 4944. It subjected Mr. Cooper to violence at the hands of DOCCS COs without the possibility of the COs being exposed for their actions." (*Id.* at 14.)
>
> Count 5: "Mr. Cooper was injured because Defendants violated his Fourteenth Amendment Substantive Due Process Rights of being reasonably safe when Defendants consciously and deliberately discarded a DOCCS procedure and denied Mr. Cooper the protection afforded him under DOCCS procedure regarding inmate transfers between Blocks." (*Id.* at 15–16.)
>
> Count 6: "The Inspector General has deliberately, intentionally and willfully failed to conduct the investigation it was charged to do. The Inspector General's blatant failure to fulfill its responsibilities is caused a desire to keep hidden the fact that 5PCF personnel could not account for Mr. Cooper's whereabouts in the hours following the riot; the fact that Mr. Cooper was assaulted but his Use of Force report disappeared and was destroyed; the fact that Mr. Cooper was moved from one Block to another during a lockdown in contradiction of DOCCS policy or Directive; and that Mr. Cooper suffered injuries and water boarding at the hands of COs. Mr. Cooper was injured because Defendant John Doe, Inspector General violated his Fourteenth Amendment Substantive Due Process Rights of being reasonably

safe by the denial of a resolution of his grievance even though Defendant Sheahan has already determined bona fide harassment took place." (*Id.* at 17.)

Count 7: "Defendant Sheahan deliberately, intentionally and willfully chose to ignore Mr. Cooper's grievance despite the fact that he already made a determination that bona fide harassment took place. Defendant Sheahan's blatant failure to fulfill his duty is caused a desire to keep hidden the fact that 5PCF personnel could not account for Mr. Cooper's whereabouts in the hours following the riot; the fact that Mr. Cooper was assaulted but his Use of Force report disappeared and was destroyed; the fact that Mr. Cooper was moved from one Block to another during a lockdown in contradiction of DOCCS policy or Directive; and that Mr. Cooper suffered injuries and water boarding at the hands of COs." (*Id.* at 18.)

Count 8: "Further, all of the Use of Force reports, except one, were listed in the Unusual Incident report. That one was Mr. Cooper's Use of Force report. There is no mention of Mr. Cooper's Use of Force Report in the Unusual Incident Report. No CO has claimed responsibility for the use of force against Mr. Cooper. Nor did the Superintendent submit a completed Use of Force Report regarding Mr. Cooper. It is irrational and arbitrary for Defendants to not resolve Mr. Cooper's Use of Force report. There is no legitimate governmental policy or basis for ignoring Mr. Cooper's Use of Force report and the destruction of the report is not a result of a mistake. Mr. Cooper was injured because he was treated differently from other similarly situated inmates based on Defendants' arbitrary and irrational actions." (*Id.* at 20.)

Count 9: "Mr. Cooper was treated differently than other inmates because Defendants Sheahan or Watch Commander did not follow the proper procedure to transfer Mr. Cooper from Block 9 to Block 11. DOCCS has a policy or Directive regarding transfer of an inmate between Blocks. The 5PCF personnel deliberately, intentionally and willfully ignored the DOCCS policy or Directive and moved Mr. Cooper from Block 9 to Block 11 without following the proper procedures. It was irrational and arbitrary for Defendants Sheahan, Watch Commander or John Doe(s) to transfer Mr. Cooper from one block to another." (*Id.* at 21.)

Defendants oppose Cooper's motion for several reasons. Procedurally, defendants believe that the time for amendments has passed. "Plaintiff acknowledges that the statute of limitations has run but argues that under Rule 15(c)(1)(C) his PAC [proposed amended complaint] relates back to the original Complaint, so he should be permitted to add new defendants and claims that he has

6

only recently become aware of the plausibility of pleading. *See* Dkt. No. 77-1, p.13. To proceed with the claims, therefore, plaintiff must, but cannot, satisfy Rule 15(c)." (Dkt. No. 80 at 5.) Defendants then explain why, in their view, Rule 15(c) will not apply here: The rule contemplates changes in parties and not additions of parties; the rule helps with mistaken identity of parties, and Cooper has not claimed any mistake; the proposed new defendants did not have notice of the case within the original time for service of process; and all defendants would suffer prejudice from a dramatic increase in the amount of discovery that would become necessary in an already six-year old case. Defendants object further that Cooper has not done enough to identify who the John Doe defendants might be. Defendants have substantive objections as well. In defendants' view, Cooper's allegations about various administrative violations do not satisfy the "shock the conscience" standard required for violations of substantive due process. Cooper's allegations also failed to establish a constitutional right to administrative investigations. Finally, defendants assert that Cooper continues to fall short of a plausible allegation of purposeful discrimination, as would be necessary to establish a violation of equal-protection standards.

## III. DISCUSSION

### A. Motions to Amend Generally

Under the circumstances here, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citation omitted). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."

7

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citation omitted).

### B. Timeliness and Relation Back

The first issue that the Court needs to examine is whether Cooper's proposed new claims would be timely. As summarized above, defendants say no for several reasons: The limitations period has run; Cooper made no mistake about identity; the proposed new defendants did not receive notice within the time for service of the original complaint; and Cooper has not provided enough information to help identify any John Doe defendants. (Dkt. No. 80 at 7–10.) Cooper acknowledges a three-year limitations period for Section 1983 claims. (Dkt. No. 77-1 at 14.) There can be no serious question here that, if Cooper were starting from scratch, the time to commence claims from an incident in 2012 would have expired a long time ago. *See, e.g., Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) ("Section 1983 does not provide a specific statute of limitations. Thus, courts apply the statute of limitations for personal injury actions under state law. Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations.") (citations omitted).

The real question, then, is whether Cooper can relate any new claims back to any existing claims that he did file timely. Under Rule 15(c)(1), an amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). Cooper proposes adding several John Doe defendants: a more generic John Doe defendant who was a corrections officer on duty during the night in question; the Watch Commander on the night in question, whose name currently is unknown but whose identity should be fairly easy to confirm; and the DOCCS Inspector General, a distinct individual whose name currently is unknown to Cooper. State law, which furnishes the limitations period here, allows for relation back of John Doe defendants. *See* N.Y. C.P.L.R. ("CPLR") 1024. "To take advantage of § 1024, a party must meet two requirements. First, the party must exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name. Second, the party must describe the John Doe party in such form as will fairly apprise the party that he is the intended defendant." *Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013) (internal quotation and editorial marks and citations omitted). Cooper has shown due diligence in several ways. When he was still *pro se*, Cooper engaged in discovery such as interrogatories (Dkt. No. 21) to determine what happened on the evening in question and who was on duty. *Cf. Soller v. Boudreux*, No. 12-CV-0167 SJF SIL, 2015 WL 500492, at *6 (E.D.N.Y. Feb. 3, 2015) (finding CPLR 1024 satisfied "particularly since plaintiffs were proceeding *pro se* at the time the applicable limitations period expired"). Cooper's *pro bono* counsel additionally served subpoenas and engaged in other discovery (*see* Dkt. No. 57); the goal of the additional discovery included ascertaining everyone on duty on the night in question and everyone responsible for the events that unfolded. As for descriptions, the timetable for Cooper's allegations has assisted in putting the parties on notice as to who the John Doe defendants might be: any corrections officers or supervisors on duty or in charge in the night in question, who have not

yet been identified. *Cf. Ceara v. Deacon*, 68 F. Supp. 3d 402, 411–12 (S.D.N.Y. 2014) ("Plaintiff's detailed description of the incident in the original Complaint provided sufficient information about the identity of Defendant, the location of the incident, and Defendant's precise conduct."). Under these circumstances, relation back for the John Doe defendants applies by way of Rule 15(c)(1)(A). Additionally, Cooper has named John Doe defendants as far back as his original and amended *pro se* complaints. (Dkt. Nos. 1, 10.) The theories of liability in the *pro se* complaints differ somewhat from the theories in the proposed amended pleading, but the Court can grant Cooper some latitude for the difference, especially now that *pro bono* counsel is providing assistance. "Provided the amended pleading is based on the same series of transactions and occurrences alleged in the original pleading, the revised pleading will relate back to the original pleading, even where the revised pleading contains legal theories not included in the original." *White v. White Rose Food*, 128 F.3d 110, 116 (2d Cir. 1997) (citations omitted); *see also McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) ("[W]e read the pleadings of a *pro se* plaintiff liberally and interpret them to raise the strongest arguments that they suggest.") (internal quotation marks and citation omitted); *Fleming v. Verizon New York, Inc.*, 419 F. Supp. 2d 455, 467 (S.D.N.Y. 2005) (citations omitted); *Mask v. Johnson*, No. 96 CIV. 6167 (DC), 1997 WL 662337, at *3 (S.D.N.Y. Oct. 22, 1997). Relation back for the John Doe defendants thus would apply by way of Rule 15(c)(1)(B) as well.

Relation back for the proposed named defendants operates a little differently. Cooper named defendant Sheahan in the original *pro se* complaint, but Sheahan was dismissed during initial screening because Cooper was asserting only *respondiat superior* liability against him at that time. (Dkt. No. 9 at 4.) Sheahan thus was never served with either the original or amended *pro se* complaints. *Cf. United States v. The Baylor Univ. Med. Ctr.*, 469 F.3d 263, 270 (2d Cir. 2006) (no relation back in a *qui tam* action where, of necessity, the sealed complaint was never served); *accord U.S. ex rel. Deering v.*

10

*Physiotherapy Assocs., Inc.*, 601 F. Supp. 2d 368, 375 (D. Mass. 2009) ("The Second Circuit, the only federal court of appeals to decide the issue [concerning sealed *qui tam* complaints], has held that a claim brought outside the statutory limitations period cannot relate back to a complaint never served on the defendant . . . ."). Nonetheless, Sheahan likely knew, or should have known, of the probability of litigation given the grievance that Cooper filed about the incident in question. Sheahan also likely knew, or should have known, that the other defendants were served and that he also would have been served but for a defective theory of liability by a *pro se* plaintiff. There is a significant possibility that Cooper dropped Sheahan in his amended *pro se* complaint out of the mistaken belief that, with one theory of liability having failed, he could not press any theory of liability. *Cf. Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010) ("A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity."). Prejudice against Sheahan is unlikely. The same counsel will provide representation. Some discovery likely would have to be added with respect to possible liability against Sheahan, but discovery that has occurred so far would apply equally. Sheahan thus can be added to the new amended complaint. The amendment to add proposed defendant Haff is the toughest call. If the Court had to consider adding Haff as a stand-alone proposition then it would have difficulty seeing how Haff would fit under any of the provisions of Rule 15(c). At the same time, though, Haff likely will have the same counsel as the currently named defendants and will have to defend against the same alleged events. *Cf. Archibald v. City of Hartford*, 274 F.R.D. 371, 380 (D. Conn. 2011) ("In this case, Attorney Ricketts, who represents Officers Labbe and Spearman, also represents Detectives Fargnoli and Watson, and the

11

Court finds that he knew or should have known that Officers Labbe and Spearman would be added to the suit. The original Complaint contained considerable detail regarding the roles of John Doe 1 and Jane Doe 1 and Mr. Archibald's interaction with those officers as well as with the other unidentified officers."). Further, this case does not require adding Haff as a stand-alone proposition. The parties continue to work on the identities of the officers and supervisors on duty during the night in question. The parties have not ruled out the possibility that Haff is one of the John Doe defendants. *Cf. Bishop v. Best Buy, Co. Inc.*, No. 08 CIV. 8427 LBS, 2010 WL 4159566, at *3 (S.D.N.Y. Oct. 13, 2010) ("Here, the individual employees plainly had notice. While the original complaint did not identify individual employees by their full names, it identified the positions held by each—Loss Prevention Manager, Store Director, Manager, and Security Guard—and the first name of Peter Troupas, who allegedly shouted a racial epithet at Plaintiff."). Prudence warrants allowing the addition of Haff for now and revisiting the issue later if necessary. "To hold that Rule 15(c) does not permit relation back in such circumstances would permit defense counsel to eliminate claims against any John Doe defendant merely by resisting discovery requests until the statute of limitations has ended." *Byrd v. Abate*, 964 F. Supp. 140, 146 (S.D.N.Y. 1997).

The Court has substantive concerns about the allegations against the proposed defendants, and those concerns are addressed below. Procedurally, however, the Court sees no barrier to allowing Cooper's proposed amended complaint to relate back to the original complaint.

### C. *Proposed Counts 3 Through 7: Substantive Due Process*

Apart from any procedural arguments about timeliness, defendants object on substance to the claims that Cooper would add in Counts 3 through 7 of his proposed amended complaint. Common to all four proposed counts is Cooper's assertion that, because he "is incarcerated and under the bodily control of DOCCS, a special relationship is present between DOCCS and Mr.

Cooper. This special relationship imposes upon DOCCS, and its employees, a constitutional duty under the Substantive Due Process Clause of the Fourteenth Amendment to take reasonable measures to keep Mr. Cooper safe at 5PCF." (Dkt. No. 77-2 at 9, 13, 15, 16, 17.) According to Cooper, the proposed new defendants violated substantive due process protections by failing to account for all inmates after the riot occurred; by failing to follow proper procedure requiring them to include Cooper in an Unusual Incident Report; by discarding a Use of Force Report that was prepared concerning Cooper; and by failing to conclude a grievance investigation by determining whether a bona fide harassment issue existed. (Dkt. No. 77-2 at 15–18.) Defendants counter that Cooper's "substantive due process claims must fail because he had failed to allege conduct which shocks the conscience and was so brutal and offensive that it did not comport with traditional ideas of fair play and decency. He has instead repeatedly alleged that the proposed defendants merely failed to follow various DOCCS directives, which notably is not a basis for a 42 U.S.C. § 1983 [action]." (Dkt. No. 80 at 19 (internal quotation and editorial marks and citations omitted).)

Defendants note correctly, and the Court wrote previously, that "it is well settled that violations of state regulations, standing alone, are not cognizable under section 1983." *Telesford v. Annucci*, No. 916CV0793BKSDEP, 2017 WL 3600941, at *6 (N.D.N.Y. July 26, 2017) (citations omitted), *report and recommendation adopted*, No. 916CV0793BKSDEP, 2017 WL 3588640 (N.D.N.Y. Aug. 18, 2017). (*See also* Dkt. No. 74 at 8–9.) To the extent that Cooper is alleging violations of inmate counts and grievance procedures in themselves, those allegations are not actionable. Cooper, however, is alleging something more here—a substantive due process right to safety while in custody. Cooper successfully has tied this right to safety to a plausible allegation that the current and proposed defendants lost track of him for eight hours after a prison riot, leaving him vulnerable to physical attack. "[T]he right to personal security constitutes a 'historic liberty interest' protected

13

substantively by the Due Process Clause. And that right is not extinguished by lawful confinement, even for penal purposes." *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982). *Youngberg* and cases that have cited it discussed substantive due process rights within the context of pretrial detainees. *See, e.g., Velasquez v. City of New York*, No. 12-CV-4689, 2012 WL 5879484, at *2 (E.D.N.Y. Nov. 21, 2012) ("While in custody, a pretrial detainee has a Fourteenth Amendment substantive due process right to care and safe conditions."). Cooper is not a pretrial detainee, and cases addressing the safety of convicted inmates seem to do so under the Eighth Amendment, not the Fourteenth. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 833 (1994) ("In particular, as the lower courts have uniformly held, and as we have assumed, prison officials have a duty to protect prisoners from violence at the hands of other prisoners.") (internal quotation and editorial marks and citations omitted); *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) ("The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody. Moreover, under 42 U.S.C. § 1983, prison officials are liable for harm incurred by an inmate if the officials acted with 'deliberate indifference' to the safety of the inmate.") (citations omitted). These cases coincide with the general principle that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (Rehnquist, C.J., plurality opinion) (internal quotation marks and citations omitted); *see also id.* at 271–72 ("As a general matter, the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended. The protections of substantive due process have for the most part been accorded to matters relating to

marriage, family, procreation, and the right to bodily integrity.") (internal quotation marks and citations omitted).

Consequently, and recognizing that Cooper has alleged something plausible beyond just a violation of prison regulations, the Court will try to strike a balance between allegations that originated in a *pro se* complaint; the assistance that *pro bono* counsel is trying to provide; and the important principles under Section 1983 that defendants are advocating. The substance of Counts 3 through 7 will be permitted, but Cooper will have to recast them as Eighth Amendment violations of safety guarantees for inmates. The Court denies Cooper's motion to the extent that he is attempting to fit any allegations about safety under the Fourteenth Amendment.

### D. Proposed Counts 8 and 9: Equal Protection

The Court will be brief with the last two counts of the proposed amended complaint. Defendants challenge these proposed counts on the basis that they differ little from proposed equal-protection counts that the Court rejected previously. (Dkt. No. 80 at 21–22.) The Court agrees. The Court addressed in its prior Decision and Order why Cooper will not be able to plead any plausible allegations about violations of the Equal Protection Clause. (Dkt. No. 74 at 7–9.) That same analysis is incorporated here by reference. The Court accordingly denies Cooper's motion for leave to add Counts 8 and 9.

## IV. CONCLUSION

Simply put, and subject to the completion of discovery and dispositive motion practice, Cooper has an Eighth Amendment case about excessive force and deliberate indifference to inmate safety. The proposed amended complaint may proceed if conformed accordingly. For all of the above reasons, then, the Court grants Cooper's motion for leave to amend (Dkt. No. 77) in part. On or before January 10, 2019, Cooper will file and serve an amended complaint that is consistent

with this Decision and Order. The Court denies Cooper's motion to the extent that it seeks any other relief.

SO ORDERED.

_/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: November 12, 2018