UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JASON COOPER, #11A5404

        **Plaintiff,**

  vs.                                      12-CV-1227S

MICHAEL MALTESE, et.al;

        **Defendants.**
_____

**MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

 

THE LAW OFFICE OF
WILLIAM CHEN, PC
*Attorney for Plaintiff*
William Chen, Esq.
2306 Delanoy Ave.
Bronx, NY 10469
716-392-3503

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ……………………………………………………  1

STATEMENT OF FACTS ………………………………………………………  1

WHEN SUMMARY JUDGMENT MUST BE DENIED ………………………….  1

ARGUMENTS

I.  DEFENDANTS MOTION MUST BE DENIED AS MR. COOPER
EXHAUSTED HIS ADMINISTRATIVE REMEDIES PRIOR
TO COMMENCING THE PRESENT ACTION ………………………………….  2

A.  Mr. Cooper's exhausted his administrative remedies when Defendant
Superintendent Sheahan issued his favorable decision on December 5, 2012 ………  3

B.  Mr. Cooper then filed his complaint after exhaustion ……………………………  4

C.  Mr. Cooper has satisfied the PLRA requirements ………………………………….  5

D.  If the court wants to use the first complaint to determine exhaustion,
Mr. Cooper still filed the complaint after exhaustion ………………………………….  6

E.  Even if the remedies have not been exhausted, Defendants are
estopped from now challenging exhaustion ……………………………………………  7


II.  MR. COOPER PROVIDED SUFFICIENT NOTICE IN HIS GRIEVANCE TO
DEFENDANTS OF HIS FAILURE TO PROTECT CLAIMS ……………………….  7


CONCLUSION ……………………………………………………………..  12

# TABLE OF AUTHORITIES

**Cases**

Abney v. McGinnis, 380 F.3d 663, 669 (2d Cir. 2004) ……………………………….   4, 7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ……………………..…..   2

Andrews v. Cruz, 2010 WL 1141182,

2010 U.S. Dist. LEXIS 28124 (S.D.N.Y. March 24, 2010) ……………………….   4

Booth v. Churner, 532 U.S. 731, 738 (2001) ……………………………………………   3

Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) ………………………………….   7, 8

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ……………………………………..   2

Corrigan v. Barbery, 371 F.Supp. 2d 328 (W.D.N.Y. 2005) …………..…………….   6

Dabney v. Pegano, No. 9:10-CV-1109 (GTS/TWD) (N.D.N.Y. Sept 4, 2013) ….........   4

Dory v. Ryan, 999 F.2d 679 (2d Cir. 1993) …………………………………………...   6

Dory v. Ryan, 25 F.3d 81 (2d Cir. 1994 ………………………………………………..   6

Espinal v. Goord, 558 F.3d 119, 125 (2d Cir. 2009) ……………………………………   8

Holt v. KMI-Continental, Inc., 95 F.3d 123, 128 (2d Cir. 1996) ………………...….   2

Jenkins v. Haubert, 179 F.3d 19 (2d Cir. 1999) ……………………………………   7

Johnson v. Testman, 380 F.3d 691 (2d Cir. 2004) ……………………………………   7, 8

Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) ……………………………….……   6

Priestley v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011) ………..…………….   2

Porter v. Nussle, 534 U.S. 516, 524 (2002) ……………………………………………   3

Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999) …………………………..   5

Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993) …………………………   2

**Statutes**

42 U.S.C. §1997e(a) ………………………………………………………………….. 3

**Other Authorities**

7 NYCRR Part 701 ………………………………………………………………. 3

7 NYCRR §701.1(a) ……………………………………………………………. 3

7 NYCRR §701.2 ………………………………………………………………. 3

7 NYCRR §701.5 ………………………………………………………………. 3

7 NYCRR §701.8 ………………………………………………………………. 3

7 NYCRR §701.8(b) …………………………………………………………… 3

7 NYCRR §701.8(c) …………………………………………………………… 3

7 NYCRR §701.8(d) …………………………………………………………… 3

7 NYCRR §701.8(d)(2) ………………………………………………………… 3

DOCCS Directive No. 4040 …………………………………………………… 3

Federal Rules of Civil Procedure 3 ……………………………………………… 5

Federal Rules of Civil Procedure 5(d)(2)(A) …………………………………… 5

Federal Rules of Civil Procedure 56 …………………………..……………… 1

Federal Rules of Civil Procedure 56(a) ………………………………………… 1, 2

Federal Rules of Civil Procedure 56(f) …………………………..…………… 2

## PRELIMINARY STATEMENT

Plaintiff Jason Cooper ("Cooper") submits this memorandum of law in opposition to Defendants' motion for summary judgment pursuant to Federal Rules of Civil Procedure ("Fed.R.Civ.P.") 56.  Defendants' summary judgment motion must be denied because Mr. Cooper exhausted his administrative remedies, as required under the Prisoner Litigation Reform Act ("PLRA"), prior to beginning his action.  The dates cited by Defendants are wrong.  In the alternative, Defendants are now estopped from asserting this affirmative defense.  Further, Mr. Cooper provided sufficient details in his grievance to give Defendants notice of his claims of failure to keep him safe.

This Court must deny Defendants' summary judgment motion.  It is respectfully requested that this Court, *sua sponte*, grant Plaintiff Mr. Cooper summary judgment and hold that he has exhausted administrative remedies and timely filed his complaint.

## STATEMENT OF FACTS

The facts concerning this motion are fully set forth in the Statement of Undisputed Facts submitted by Defendants.  In addition, additional facts are contained in the Declaration of William Chen, Esq, dated February 14, 2020 ("Chen Dec.").  Plaintiff respectfully refers the Court to these two documents, as well as the Declaration of Rachael Seguin, dated January 10, 202 ("Seguin Dec.") for a complete recitation of the relevant facts.

## WHEN SUMMARY JUDGMENT MUST BE DENIED

A party may make a motion asking the court to grant summary judgment on all or part of its claims or defenses in an action presently before the court.  Fed.R.Civ.P. 56(a).  The court may

grant the motion for summary judgment only when the moving party shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id.; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

A fact is considered "material" if the fact has some affect on the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "All facts must be viewed in the light most favorable to the non-moving party and the non-moving party must be given the benefit of all reasonable inferences." Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993).

Summary judgment must be denied when there is evidence in the record from which a reasonable inference in the nonmoving party's favor may be drawn. Celotex, 477 U.S. at 331. If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. Holt v. KMI-Continental, Inc., 95 F.3d 123, 128 (2d Cir. 1996).

In addition, a court has the discretion to grant summary judgment *sua sponte* to the non-moving party. Priestley v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011). Before doing so, the court must provide notice of its intent to do so and provide a reasonable time to respond. Fed.R.Civ.P. 56(f).

## ARGUMENTS

### I.  DEFENDANTS MOTION MUST BE DENIED AS MR. COOPER EXHAUSTED HIS ADMINISTRATIVE REMEDIES PRIOR TO COMMENCING THE PRESENT ACTION

This Court must deny Defendants' motion for summary judgment. The PLRA requires a prisoner who is confined in a jail, prison or other correctional facility to exhaust all

administrative remedies before bringing an action under, *inter alia*, 42 U.S.C. §1983.  42 U.S.C. §1997e(a); Porter v. Nussle, 534 U.S. 516, 524 (2002).  The administrative remedies include all administrative processes promulgated by state agencies.  Booth v. Churner, 532 U.S. 731, 738 (2001).

*A.  Mr. Cooper's exhausted his administrative remedies when Defendant Superintendent Sheahan issued his favorable decision on December 5, 2012*

Mr. Cooper received a favorable decision from Defendant Superintendent Sheahan in his grievance and that caused the exhaustion of his administrative remedies.  The administrative process used by New York State Department of Corrections and Community Service ("DOCCS") is the Inmate Grievance Program ("IGP"), as set forth in DOCCS Directive 4040, codified at 7 NYCRR Part 701.  *See* Sequin Dec., Exhibit A.  The IGP provides a way for an inmate to bring a grievance and have it resolved.  7 NYCRR §701.1(a).  While regular grievances follow a three-step process found at 7 NYCRR §701.5, grievances that allege harassment proceed along an expedited track.  *Id*. at §701.8.

Under the expedited track, the grievance is given to the facility Superintendent immediately after filing.  *Id*. at §701.8(b).  The Superintendent must determine whether the grievance, if true, represents a *bona fide* case of harassment.  *Id*. at §701.8(c).  Harassment is defined as "employee misconduct meant to annoy, intimidate or harm an inmate."  *Id*. at §701.2.  If the Superintendent determines that no harassment took place, the grievance is returned for processing through the regular grievance procedure.  *Id*. at §701.8(c).

Once the Superintendent determines that *bona fide* harassment took place, the Superintendent must choose one of three options.  *Id*. at §701.8(d).  One of the choices is to request an investigation by the DOCCS' Inspector General's office.  *Id*. at 701.8(d)(2).

Importantly, the Superintendent's referral of the grievance to the Inspector General is considered a favorable outcome. Andrews v. Cruz, 2010 WL 1141182, 2010 U.S. Dist. LEXIS 28124 (S.D.N.Y. March 24, 2010) (cited within Dabney v. Pegano, No. 9:10-CV-1109 (GTS/TWD) (N.D.N.Y. Sept 4, 2013). Once favorable relief is obtained on a grievance, exhaustion has occurred. Abney v. McGinnis, 380 F.3d 663, 669 (2d Cir. 2004).

In the present case, there is no question that Mr. Cooper exhausted his administrative remedies. Mr. Cooper filed his grievance alleging he was the subject of excessive force and that DOCCS failed to protect him and keep him safe. There is no question that these claims fall within the definition of harassment. In fact, DOCCS processed Mr. Cooper's grievance under the expedited process and forwarded his grievance to Defendant Superintendent Sheahan immediately after filing. Statement of Undisputed Facts, at ¶8.

Defendant Superintendent Sheahan issued his decision on December 5, 2012. *Id*. at ¶ 9. In it, he determined that *bona fide* harassment took place and decided to refer the matter to the DOCCS Inspector General. Seguin Dec., Exhibit B, Bates 163. This is a favorable decision and Mr. Cooper did not need to appeal further, thus exhausting his administrative remedies. Contrary to Defendants' assertion, Mr. Cooper was not required to appeal the favorable decision from Defendant Superintendent Sheahan to CORC.

Mr. Cooper exhausted his administrative remedies on December 5, 2012 when Defendant Superintendent Sheahan referred Mr. Cooper's grievance to the DOCCS Inspector General for investigation.

B.  *Mr. Cooper then filed his complaint after exhaustion*

Mr. Cooper filed his complaint on April 18, 2013 after exhausting administrative remedies. April 18, 2013 is the date that this Court must use as the date his complaint was filed.

~ 4 ~

It is true that Mr. Cooper initially filed a complaint with the Court on December 11, 2012. *See* Dkt. No. 1.

But, the Hon. William Skretny then issued a Decision and Order dated 12/28/2002 and filed January 2, 2013. *See* Dkt. 4. In it, Hon. Skretny ordered the Clerk of the Court to administratively dismiss the action and without filing the complaint. *Id*. at p.4.

The result of Hon. Skretny ordering the Clerk not to file the complaint is that the action never began. An action in Federal court is commenced by filing a complaint. Fed.R.Civ.P. 3. A complaint if filed when it is delivered to the clerk. Fed.R.Civ.P. 5(d)(2)(A). Here, the Clerk of the Court was ordered by Hon. Skretny not to file the December 11, 2012 complaint. As a result, Mr. Cooper's action was not filed and his action was never commenced.

Further, the administrative dismissal is without prejudice because this Court granted Mr. Cooper the right to refile his complaint. *See* Dkt. 4. While the April 18, 2013 complaint is labeled as an amended complaint, there were no new claims added.

Refiling a complaint after exhaustion of administrative remedies is appropriate and the complaint is timely. <u>Snider v. Melindez</u>, 199 F.3d 108, 111-12 (2d Cir. 1999).

And that is what happened in this case. Mr. Cooper filed his new complaint with this Court on April 18, 2013. *See* Dkt. No. 10. Mr. Cooper signed the Prisoner Complaint Form on April 4, 2013. *Id*. at p.7.

C. *Mr. Cooper has satisfied the PLRA requirements*

As shown above, Mr. Cooper exhausted his administrative remedies on December 5, 2012. He then filed the complaint on April 18, 2013. There is no question that Mr. Cooper filed his complaint after he exhausted his administrative remedies. It is respectfully requested that this Court deny Defendants' motion for summary judgment.

*D. If the court wants to use the first complaint to determine exhaustion, Mr. Cooper still filed the complaint after exhaustion*

*Assuming arguendo* that this Court wishes to use the original complaint to determine the filing date, December 11, 2012 is the date that must be used.  Defendants' argument that November 22, 2012 should be the date to be used to determine when the complaint was filed is wrong.  In support of their argument, Defendants attempt to use the "prison mailbox rule."  However, the use of the "prison mailbox rule" is primarily used in habeas petitions.  That was the case in Corrigan v. Barbery, 371 F.Supp. 2d 328 (W.D.N.Y. 2005), a case cited by Defendants in support of their claim.  Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) lists cases where the "rule" has been applied, but none of them address determining when a complaint was filed.  The other case cited by Defendants, Dory v. Ryan, 999 F.2d 679 (2d Cir. 1993) was reversed the Second Circuit in Dory v. Ryan, 25 F.3d 81 (2d Cir. 1994).  It is not the law in the Second Circuit that the "prison mailbox rule" applies to determine when a complaint is filed under the PLRA.

Instead, the actual date of commencement is used.  Defendants own memorandum of law supports this view.  At P.6, Defendants write, "[i]n the Second Circuit, the date of commencement is the date used for the exhaustion analysis… (*emphasis added*)."  There is no question that the actual date the complaint is filed with the Court is the date that should be examined.

Here, the original complaint was filed on December 11, 2012.  *See* Dkt. 1.  Defendant Superintendent Sheahan issued his decision to refer Mr. Cooper's grievance to the Inspector General on December 5, 2012.  Statement of Undisputed Facts, ¶ 9.  Mr. Cooper's complaint was filed *after* Defendant Sheahan issued his favorable decision.  Mr. Cooper exhausted his

~ 6 ~

administrative remedies before his complaint was filed.  This Court must deny Defendants motion to dismiss Mr. Cooper's excessive force claims.

*E.  Even if the remedies have not been exhausted, Defendants are estopped from now <u>challenging exhaustion</u>*

Even if this Court determined November 22, 2012 is the filing date of the complaint, Defendants are now estopped from asserting this affirmative defense.  While the PLRA's exhaustion requirement is mandatory, there are circumstances that excuse the prisoner's failure to exhaust, such as estoppel.  <u>Abney,</u> 380 F.3d at 667.  Failure to exhaust administrative remedies is an affirmative defense that must be raised by defendant.  <u>Jenkins v. Haubert</u>, 179 F.3d 19 (2d Cir. 1999).  A defendant forfeits the affirmative defense of non-exhaustion by failing to raise or preserve it.  <u>Abney</u>, at 667; <u>Johnson v. Testman</u>, 380 F.3d 691 (2d Cir. 2004).

In the present case, Mr. Cooper began the action at the end of 2012 or early 2013.  It is now 2020!  More than <u>seven</u> years has passed.  There is no question that Defendants must now be estopped from challenging exhaustion.  This Court must deny Defendants' summary judgment motion.

**II.  MR. COOPER PROVIDED SUFFICIENT NOTICE IN HIS GRIEVANCE TO DEFENDANTS OF HIS FAILURE TO PROTECT CLAIMS**

It is respectfully submitted that this Court must not dismiss Mr. Cooper's failure to protect and keep safe claims.  The rule in the Second Circuit is that, in furtherance of the PLRA's objectives, that "inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." <u>Johnson v. Testman</u>, 380 F.3d 691, 697 (2d Cir. 2004).  It is similar to the notice pleading standard.  <u>Brownell v. Krom</u>, 446 F.3d 305, 310 (2d Cir. 2006).  "In determining whether exhaustion has been achieved,

[the Second Circuit has] drawn an analogy between the contents of an administrative grievance and notice pleading, explaining that '"[a]s in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance needs do is object intelligibly to some asserted shortcoming."'" Id. (quoting Johnson v. Testman, 380 F.3d at 697). Thus, to determine whether an inmate has exhausted his administrative remedies, the Court must determine whether the inmate's grievance was sufficient on its face to alert the prison of his complaint. Brownwell, 446 F.3d at 310-11. This is in accord with the requirements of the IGC. 7 NYCRR 701.5(a)(2). A prisoner is not required to name responsible parties in a grievance in order to exhaust administrative remedies. Espinal v. Goord, 558 F.3d 119, 125 (2d Cir. 2009). Nor is a prisoner required to "articulate legal theories." Id. at 127-28. All an inmate has to provide in his grievance was "a specific description of the problem." Id. at 127.

The events that support Defendants' failure to protect and keep Mr. Cooper safe stems from the hours after the riot on the night of October 21, 2012 where Defendants lost custody and control of Mr. Cooper. There are important and material facts that are in the control of DOCCS related to this event. DOCCS then engaged in a cover up of their shortcomings.

In the case at bar, Mr. Cooper provided enough facts to alert DOCCS of his failure to keep safe claims. A copy of Mr. Cooper's grievance is found at Seguin Declaration, Exhibit B (Bates No. 164-165). In summary, Mr. Cooper stated that he was in the yard and then assaulted by Defendant Hill. He was treated in the infirmary and photographed by Corrections Officers. He was then taken to the shower in the draft room where he was tortured by other Defendants.

Mr. Cooper's grievance contains enough facts to show how DOCCS officials failed to keep him safe during the riot on October 21, 2012 by losing custody and control of him and then

trying to cover up their failure afterwards. These facts, plus information and documents within Defendants control, give Defendants sufficient notice of the failure to keep safe claims.

The inmates who were involved in the riot were brought to the gym while everyone else were returned to Block 9 and decontaminated from the chemical bomb the Corrections Officers used to regain control of the yard. *See* Chen Dec., Exhibit A (Unusual Incident Report).

DOCCS lost control and custody of Mr. Cooper as soon as it regained control of the yard. It was the responsibility of DOCCS and all of the Defendants to ensure the safety of all inmates by making sure all inmates are accounted for at all times. This is accomplished through conducting a count, per DOCCS policy. Unfortunately, this did not occur that night. A review of the Unusual Incident Report shows that Mr. Cooper is not listed as one of the inmates brought to the gym. A review of the Block 9 log shows that the counts that should have been taken at 10pm, 11pm and 1am were suspended and no count was taken until after 2am. Chen Dec., Exhibit C. The count is the only way for DOCCS to confirm the presence of inmates. Further, the COs created a list of all of the inmates who were brought back to Block 9 who were decontaminated. Chen Dec., Exhibit B. Mr. Cooper was not on the list.

This is when DOCCS first lost control and custody of Mr. Cooper. According to official DOCCS records, Mr. Cooper was not in the gym and he was not in Block 9, the only two places an inmate from Block 9 could go. All of the evidence was in the exclusive control of DOCCS. DOCCS cannot provide for an inmate's safety when it does not know the inmates whereabouts.

When DOCCS loses custody and control of an inmate, anything can happen. And something did happen. DOCCS personnel engaged in unruly behavior and Mr. Cooper was subjected to torture by Defendants. This was described in his grievance.

There is further evidence that DOCCS did not know where Mr. Cooper was that night. Mr. Cooper states that he was treated in the infirmary and photos were taken of him. A copy of the medial report is found at Chen Dec., Exhibit D. In addition, a Use of Force report, Part B, with photos, was created at the same time. Chen Dec., Exhibit E. A cursory review of the Unusual Incident Report from that night shows that Mr. Cooper was not listed among the inmates in the gym who received medical treatment. Chen Dec., Exhibit A. A review of the Block 9 log shows that nurse went there to provide medical services and no one on the Block received treatment. This shows that Mr. Cooper was not returned to Block 9.

Further, the Unusual Incident Report does not list the Use of Force report created for Mr. Cooper, even though it has the correct Use of Force log number printed on it. Chen Dec., Exhibit E. This is part of the cover up as all Use of Force Reports must be accounted for or claimed by a CO, per DOCCS Directive No. 4944. The Superintendent is then required to review and evaluate the use of force and a determination regarding the appropriateness of the force used. The completed report must be signed by the Superintendent within 10 calendar days of the incident.

Sometime in the days after the riot, DOCCS officials were staring at Mr. Cooper's Use of Force Report and made a conscious decision to disregard it. Cover up. Mr. Cooper's Use of Force report mysteriously disappeared, even though it had the same Use of Force number written on it as all of the other Use of Force reports prepared that evening. The Unusual Incident Report makes no mention of Mr. Cooper's Use of Force report even though the Unusual Incident Report lists all of the other Use of Force reports from the riot. Defendant Superintendent Sheahan would have received all of the Use of Force reports in order to prepare the Unusual Incident

report. Mr. Cooper's Use of Force Report can only disappear due to a deliberate, conscious decision for it to happen. Cover up.

At around 3:30am in the early morning of October 22, 2012, DOCCS recovered Mr. Cooper and transferred him to Block 11. Chen Dec., Exhibits C & F. The Unusual Incident Report lists all inmates who were transferred to another facility or another Block. Mr. Cooper was not listed in the report as having been transferred. DOCCS has a policy and procedure for transferring inmates between Blocks. Cover up.

Five Points then calls for a lockdown at 5:30am on October 22, 2012. Chen Dec., Exhibit G. Why was a lockdown called at 5:30am? The riot took place at 9pm and the COs had restored order soon afterwards. Upon information and belief, the lockdown was not called because of the riot, but because DOCCS realized that they had lost control and custody of Mr. Cooper and called the lockdown because of an escaped inmate situation.

To date, more than *seven* years after the riot, Defendant Inspector General has not issued a finding of its investigation nor has Defendant Sheahan issued a decision in Mr. Cooper's grievance, in violation of DOCCS Directive 4040. Cover up.

Defendants' summary judgment motion to dismiss Mr. Cooper's failure to protect and keep safe claims must be denied. Mr. Cooper presented enough facts in his grievance, in addition to facts and documents within DOCCS control, to put DOCCS on notice of Mr. Cooper's failure to protect and keep safe claims. DOCCS failure to protect occurred during the night of October 21, and early morning of October 22, 2012 when DOCCS and all defendants lost custody of Mr. Cooper during an emergency situation; the riot at Five Points and subsequent hours that was needed to restore order. All other actions by Defendants after that are related to the cover up. It is respectfully requested that Defendants' summary judgment motion be denied.

## **CONCLUSION**

For the foregoing reasons, Mr. Cooper respectfully requests that this Court deny Defendants' summary judgment motion in its entirety.  In addition, Mr. Cooper respectfully requests that this Court grant him summary judgment on the issue of exhaustion of administrative remedies under the PLRA.


Dated:  February 14, 2020


                                              THE LAW OFFICE OF WILLIAM CHEN, PC

                                              By:  ___s/ William Chen _____
                                                    William Chen

                                              *Attorney for Plaintiff Jason Cooper*
                                              2306 Delanoy Ave.
                                              Bronx, NY  10469
                                              (716) 392-3503
                                              Email:  bill@lo-wchen.com


TO:    Denetra Roberts, Esq.
          New York State Assistant Attorney General
          *Attorneys for Defendant*
          Assistant Attorney General
          Main Place Tower, Suite 300A
          350 Main Street
          Buffalo, NY  14202
          (716) 853-8400